**FILED - GR**
February 13, 2017 11:56 AM

CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY __mkc /____ Scanned/\ullet 2 uk\17

Mr. Roger Dale Roberts
3548 Roosevelt Road
Norton Shores, Michigan 49441
231-329-2411

U.S.D.C. CASE NO. _____ CIV. _____

**1:17-cv-141**

PLAINTIFF/PETITIONER
PRO SE

**Paul L. Maloney**
**United States District Judge**

**DEFENDANTS**

(1). City of Norton Shores
    4814 Henry Street
    Norton Shores, Michigan

(4). City of Muskegon
    933 Terrace Street
    Muskegon, Michigan 49442

(2). City of Norton Shores Police Department
    4814 Henry Street
    Norton Shores, Michigan 49441

(5). Muskegon County Prosecutors office
    990 Terrace Street
    Muskegon, Michigan 49441

(3). James Davis, personally
    4814 Henry Street
    Norton Shores, Michigan 49441

(6). Dale J. Hilson, personally
    990 Terrace Street
    Muskegon, Michigan 49442

# COMPLAINT FOR VIOLATION OF CIVIL RIGHTS, PRIVILEGES AND IMMUNITIES GUARANTEED UNDER STATE AND FEDERAL LAW.

IN THE INSTANT CASE, PLAINTIFF CLAIMS THE INTENTIONAL ABUSE OF AUTHORITY, FRAUD, CONSPIRACY, OBSTRUCTION OF THE DUE ADMINISTRATION OF JUSTICE, REPEATED CONSTITUTIONAL RIGHTS VIOLATIONS, AND DENIAL OF DUE PROCESS RIGHTS GUARANTEED UNDER STATE AND FEDERAL LAW.

INTENTIONAL ACTIONS, UNDER THE COLOR OF LAW, WILLFUL, WANTON, AND RECKLESS. WITH TOTAL DISRREGARD TO CONSTITUTIONAL RIGHTS OR TO THE FOR-SEEABLE CONSEQUENCES.

# STATEMENT OF JURISDICTION

The District Courts shall have original jurisdiction 28 USC sec. 1331, of any civil action authorized by law to be commenced by any person. Pursuant to 28 USC sec. 1343(a).

1343(a)(1). To recover damages ... because of the deprivation of any right or privilege of a citizen of the United States by any act done in furtherance of any conspiracy ... section 1985 Title 42.

1343(a)(3). To redress the deprivation, under color of state law, statute, ordinance ... of any right, privilege or immunity secured by the Constitution of the United States ... providing for equal rights of all citizens ... within the jurisdiction of the United States.

Evidence for this claim, arose on or about February 13th., 2015, when plaintiff, finally received discovery of the exculpatory evidence demanded since Nov., 10th., 2008. It was impossible for plaintiff to discover such evidence, in any other manner, as the evidence favorable to the plaintiff was concealed/suppressed by State actors.

Given that this civil complaint was filed within (24) month's after the discovery of nature of harm, and/or the evidence of such a claim, it is therefore, timely. Accordingly, this Court has jurisdiction to entertain plaintiff's complaint for civil rights violations.

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MICHIGAN

Mr. Roger Dale Roberts
    PLAINTIFF/PETITIONER
    PRO PER

U.S.D.C. CASE NO. _____ Civ. _____

## **COMPLAINT FOR CIVIL RIGHTS VIOLATION**
## **DEMAND FOR JURY TRIAL**

V.

## **DEFENDANTS**

(1). City of Norton Shores

(2). City of Norton Shores Police Department

(3). James Davis, individually

(4). City of Muskegon

(5). Muskegon County Prosecutors office

(6). Dale J. Hilson, individually

# COMPLAINT FOR VIOLATION OF CIVIL RIGHTS, PRIVILEGES AND IMMUNITIES GUARANTEED UNDER STATE AND FEDERAL LAW

**NOW COMES Plaintiff/Petitioner,** in propria persona (hereinafter referred to as "Mr. Roberts") the pleading and relief requested are filed in good faith with sincere belief on plaintiff's part, that the pleading being meritorious, are deserving of the consideration of this Honorable Court, 'not withstanding' the fact, they are filed without the aid or benefit of counsel. Because of this, I respectfully request this Honorable Court would not reject any part of this civil rights complaint filed herewith for purely technical reasons, and that this Honorable Court make an effect to correct, sua sponte any such errors in my complaint, for less stringent standards than formal pleadings drafter by a lawyer. Haines V. Kerner, 404 U.S. 519, 520; 92 S.Ct. 594, 596; 30 L.ed. 2d. 652 (1972).

In the case at bar, Mr. Roberts claims the intentional abuse of authority, fraud, conspiracy, obstruction of the due administration of justice, repeated Constitutional rights violations, and denial of due process rights guaranteed under state and federal law, and hereby alleges as follows;

**42 U.S. Code Sec. 1983** – Civil action for deprivation of rights: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States … thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress … (emphasis supplied).

# (1). PARTIES TO THIS COMPLAINT

### (A). THE PLAINTIFF/PETITIONER(S):
Mr. Roger Dale Roberts, PRO PER
3548 Roosevelt Road, Norton Shores, Michigan 49441, County of Muskegon
Phone: 231-329-2411   e-mail: rd.roberts58@yahoo.com

# (B). THE DEFENDANT(S):

### DEFENDANT NO. (1).
City of Norton Shores, A Political Subdivision, Mayor Gary L. Nelund, in his official capacity
4814 Henry Street, Norton Shores, Michigan 49441, County of Muskegon
231-798-4391, www.nortonshores.org

### DEFENDANT NO (2).
Norton Shores Police Department, a Governmental agency, Chief Jon Gale, in his official capacity
4814 Henry Street, Norton Shores, Michigan 49441, County of Muskegon
231-733-2691, Jon.Gale@911.net

### DEFENDANT NO. (3).
James Davis, Norton Shores Police Officer, in his individual/personal capacity
4814 Henry Street, Norton Shores, Michigan 49441, County of Muskegon
231-733-2691, email unknown

### DEFENDANT NO. (4).
City of Muskegon, a Municipal Corporation, Mayor Stephen Gawron, in his official capacity
933 Terrace Street, Muskegon, Michigan 49440, County of Muskegon
Phone: 231-724-6724, www.muskegon-mi.gov

### DEFENDANT NO. (5).
Muskegon County Prosecutor's Office, a Governmental Agency, in its official capacity
990 Terrace Street, 5th., flr., No. 505, Muskegon, Michigan 49442, County of Muskegon
Phone: 231-724-6435, www.co.muskegon.mi.us

### DEFENDANT NO. (6).
Dale J. Hilson, Muskegon County Prosecutor, in his individual/personal capacity
990 Terrace Street, 5th., flr., Muskegon, Michigan 49442, County of Muskegon
Phone: 231-726-4484, www.co.muskegon.mi.us

## (2). BASIS FOR JURISDICTION:

Under 42 U.S. Code Sec. 1983, a claimant may sue state or local officials for the "deprivation"

of any rights, privileges, or immunities to recover damages and to redress the deprivation, under

color of state law, statute, ordinance of any right, privilege, immunity secured by the U.S.

Constitution. Pursuant to 28 U.S.C. sec. 1343.

2

**(A).** Plaintiff in the instant case claims intentional use or misuse of authority, conspiracy, fraud, obstruction of the due administration of justice, and repeated denial of constitutional rights, privileges, immunities and due process violations, that continue to cause irreparable harm to the plaintiff and his family. This civil action is brought in the United States District Court for the Western District of Michigan, against state and local officials, in their individual capacity, and Government agencies in their official capacity pursuant to 42 U.S.C. Sec. 1983.

## (B). Federal, constitutional and statutory right(s) claimed to be violated are as follows:

(i). **Constitutional Rights Claim Violations For, Defendant's No. (1) & (2):** The Norton shores police department **under color of law,** purporting to conduct themselves in the course of official duty, enforcing policy, custom, or procedures, of the political subdivision of the City of Norton Shores, therein **demonstrated particular "prohibited characteristic's"** that violated state and federal laws of the united States, specifically rights and immunities preserved by the U.S. Const., **Amend (4)**, an unauthorized invasion (without a warrant) of a citizens high expectation of preserving personal privacy and/or property, in his private residence; **Amend., (5)**, the absolute refusal/denial of an individual's right to be free from the unwilling product of self-incrimination; **Amend., (6)**, the accused' constitutional right to the assistance of counsel upon request, demand, during an interrogation; **Amend., (14)**, the deprivation of liberty and property and or privacy, without due process; and further denied the equal protection of state and federal laws.

(ii). **Constitutional Rights Claim Violations For, Defendant No. (3):** James Davis, acting under color of law as police officer under the command of Sergeant Mike Kasher, and the Norton Shores police department, purported to conduct himself in the course of his official duty, enforcing departmental policies, customs, procedures, practices, therein **demonstrated particular "prohibited characteristic's"** that exceeded his authority through a prohibited method of usurpation, clearly contravening state statutory law P.A. 2004, No 478, MCL 750.145(C) Sec. (8), (10), (11), and further violating civil rights and civil liberties of the accused,

3

specifically the U.S. Const., **Amend., (4) (14**), the deprivation of liberty and property without due process rights, and denied equal protection of the law.    Officer James Davis, committed the crime of false swearing material to the proof of an alleged crime, seeking redress in the courts with unclean hands, negating the impressed/expressed function originally asserted or intended.  Corruptly influencing the magistrate to seize a person, based upon false pretenses, fraud, and perjury, tainting said actions of the 60th., judicial District Court, where the court rendered decisions involving application of that false testimony.

**(iii). Constitutional Rights Claim Violations For, Defendant's No. (4) & (5):**  The Muskegon County prosecutor's office, **under color of law,** purported to conduct themselves in the course of official duty, enforcing policy, custom, practice, procedures of the City of Muskegon, County of Muskegon, therein **demonstrated particular "prohibited characteristic's"** that violated state and federal laws of the united states, specifically rights and immunities preserved by the U.S. Const., **Amend., (4),** as where no warrant shall issue, but upon probable cause, supported by oath or affirmation;  **Amend., (14),** the deprivation of liberty without due process, and further denied equal protection of the law.

Accomplished by, committing plain error, procuring, condoning, allowing perjured testimony to dictate erroneous facts, and go uncorrected, after review of an arrest warrant, then concealed, suppressed said error for approx.., seven years, or up-to and until a time when they believed the accused' appeal process had been totally exhausted.  Thereby preventing the court of appeals, in the accused' appeal of right, from exercising their duty/discretion to correct those errors that seriously affected the fairness, integrity or public reputation of the judicial proceedings in this case, resulting in a manifest miscarriage of justice.

**(iv). Constitutional Rights Claim Violations For, Defendant No. (6):**  Dale J. Hilson, acting under color of law as senior prosecuting attorney under prosecutor Tony Tague , and the Muskegon County Prosecutors office for the Municipality of Muskegon County, purported to conduct himself in the course of his official duty, enforcing policies, customs, procedures, practices, therein **demonstrated particular "prohibited**

4

**characteristic's"** that violated state and federal laws of the united states, when he intentionally concealed/suppressed exculpatory evidence upon demand, specifically violating guaranteed rights, privileges, and immunities preserved by the U.S. Const., **Amend., (4)(14)** the deprivation of liberty without due process, and further denied equal protection of the law.

Moreover, Dale J. Hilson failed in his sworn oath/duty as a public official whose primary obligation is to seek justice [in a fair trial] and insure that justice is done. The prosecutor as an autonomous entity of the state, does not have discretion to arbitrarily or selectively choose which laws of the state to enforce. In the instant case, and during the entire process, the record reflects Dale J. Hilson was acting solely as personal advocate for the alleged victim, and accomplices to alleged crime, and not as an advocate of the State of Michigan, contrary to MCL 767.39

It was also an abuse of power for Dale J. Hilson to violate his oath of office, conceal suppress exculpatory evidence, and circumvent the legal process by not referring said illegally seized evidence gathered pursuant to P.A. 2004, No. 478, MCL 750.145C,(8), to a law enforcement agency having jurisdiction to determine affirmative defenses, immunities, and exemptions under this section.

## (C). Explanation of how each defendant acted under color of state or local law.

**(i). Explanation of Claim Violation For, Defendant's No. (1) & (2):** City of Norton Shores, the Norton Shores Police Department, Sgt., Mike Kasher, and officer James Davis acting under color of law as police officer(s), made a determination to ignore the technological advances of modern times and proceed to the accused' address without a warrant., with the full intent of arresting him, if he did not answer the door or cooperate.

In short, based upon the record of the court, inferences can be made that the officers decided, apparently consistent with "departmental policy", to violate constitutional rights as a device to avoid the

5

restrictions on arresting or questioning a suspect, at least until they could obtain a confession, and/or inculpatory evidence they could not otherwise obtain.

However, after illegally seizing evidence, and compelling unwilling statements from the accused through "overborne will", interrogation tactics, and final submission to their assertion of authority, by police restraining his freedom of movement in the private residence over a period of hours. The officers failed to find any evidence to support a warrant for the arrest of the accused on a rape charge.

Then James Davis determined through a particular method of usurpation, that he would personally exercise state police power over matters of statewide concern, he was not vested with. Moreover, legislative enactment P.A., 2004, No. 478, MCL 750.145C sec. (8), (10), (11), expressly implies that the state's power to regulate this specific area "is exclusive" to achieve uniformity or necessary to serve states purpose. Whereby, the political subdivision of the City of Norton Shores, The Norton Shores police department, and officer James Davis, were expressly prohibited by state statutory language from the regulation and/or enforcement of said state obscenity statute, without the involvement of/or working in conjunction with, a state police power having jurisdiction over matters of statewide concern, regarding this specific state obscenity statute.

**(ii). Explanation of Claim Violation For, Defendant No. (3):** However, contrary to state statutory language, officer James Davis, as representative of the Norton Shores Police Department, under color of law, entered the 60th., judicial District court's (probable cause hearing) Oct., 31st., 2008 at 3:31 pm, without lawful authority, and attempted to exercise police power having jurisdiction over matters of statewide concern that he was not vested with. Ms. Valerie Alcorn, a certified electronic court reporter (CER-6232) for the 60th., judicial District Court, transcribed and certified a complete, true and correct copy of said proceedings consisting of five pages, see (exhibit "A").

The table of contents of said transcription indicate and reflect witnesses for the people as **("one")**

**officer James Davis, Norton Shores Police Department**. The record reflects witnesses for the

6

defendant as "**none**". Officer James Davis offered no form of authorization or lawful authority whatsoever, "as, all exhibits" <u>for the people</u> were entered as **"none"**, the record fails entirely to provide a single document, or testimony, affirmation or any other evidence of record, that **"ANY"** law enforcement agency of state police power, having jurisdiction over matters of statewide concern, pre-empting local option authority, "were ever" contacted, "or working in conjunction with" the political subdivision of Norton Shores, the Norton Shores police department, or officer James Davis. The record further reflects that the **state was not properly represented at said hearing**, neither in person, nor in any written form or documentation. The appearances noted in the court record, see exhibit "A", were also entered as **"none" for the State of Michigan**. Nor was any other evidence, tangible or otherwise, offered in support of officer James Davis' <u>standing</u> to bring an enforcement action, expressly prohibited by a political subdivision of the state, pursuant to state statutory language., as provided in MCL 750.145 C sec. (8), (10), (11), to serve the states interest or purpose.

Accordingly, there was no legal authority recognized by the state, upon which officer James Davis was operating at the time he filed a felony complaint to attach jurisdiction to the person of the accused.

(a). The record of this case evidences corrupted effort of overt acts to criminal conduct by agents of the Government, in compromise of official oath(s), duty, regarding **fraud**, perjury, willful malfeasance, misfeasance, obstruction of justice, and out-right disdain for duties, rights and privileges. Where at the 60th., judicial district court, between the hour of [3:31 pm and 3:33 pm], officer James Davis did with deliberate intent and purpose, commit the offense of false swearing in a judicial proceeding, in violation of all rights, privileges, and immunities of the accused, contrary to MCL 750.422. With knowledge and intent that such testimony would defraud the accused and the court, and significantly influence the magistrate to act, and seize control over the accused. It is therefore apparent that James Davis' overt actions were designed to

impede or otherwise obstruct the due administration of fair and equal justice. Contrary to MCL 752.11 and actionable under Mich., Const., 1963, Art 5, (10) and MCL 750.505.

**(iii). Explanation of Claim Violation For, Defendant's No. (4) & (5):** The City of Muskegon, the Muskegon County Prosecutors office, and Dale J, Hilson acting under color of law as senior prosecuting attorney for said Municipal Corporation, failed to entertain the obligation to provide equal protection to all by his very conduct, or comply and conform to commands of fundamental law by our constitution.

As a result, deprived the accused of Guaranteed fair and just treatment in all legislative/executive hearings/investigations, due process rights, and equal protection of the law. Violations of U.S. Const., **Amend (5), (14);** and, Mich. Const**., 1963, Art (1), sec. (17);** Contrary to **MCL 752.11.**

The prosecutor having had the results of the "complaint/warrant authorization hearing" testimony forwarded/referred to his illustrious office, was then made well aware of officer James Davis, as the proximate and efficient cause, creating other causes to operate. However, upon review, the prosecutor relies on said tainted proceedings/testimony, borne solely upon fraud/perjury, and **fails/refuses** to notify the accused, or the tribunal, of state actors' criminal acts; therefore, advancing such elected position/testimony of James Davis, known to be highly suspicious, if not out-right contradictory with the truth.

Rather, with knowing intent and purpose, the prosecutor placed such record of this event outside the view/access of the accused **for nearly seven years,** or, until. on or about **Feb 13th., 2015**. Concealing the testimony of James Davis, now exposing the additional fraud of the prosecution never officially placing said testimony within the reach of the accused/or counsel, as requested/demanded Nov., 10th., 2008. See, exhibit "B", appearance and demand for discovery.

Failing in his oath of office to prevent operation of such testimony, which he knew or should have known to be false/misleading, from being presented in official proceedings, depriving the accused of civil rights,

privileges, and immunities, and **[a defense],** then concealing reliance on that testimony as primary foundation to their unsupported allegations for prosecution.

When the unlawful acts of James Davis were committed, they were the crimes of James Davis individually. The prosecutor was innocent, in legal contemplation; For no official is authorized to commit a crime on behalf of another. Yet, when the prosecutor, having full knowledge, sought to avail himself of the fruits of these acts in order to accomplish his own ends, he then assumed moral responsibility for James Davis' crimes.

**(iv). Explanation of Claim Violation For, Defendant No. (6):** Dale J. Hilsons', apparent intention to secure a discriminatory, selective prosecution with the maximum penalty by any means necessary, is evidenced and established by his un-restrained official influence. Further demonstrated by procedures used in obtaining a conviction that were devoid of the necessary mandatory element of requisite knowledge of the alleged crime, substantive due process or equal protection of the law. Such methods became nothing short of persecution in the name of the people, infected from his personal goals, preferences and objectives.

The prosecutor has the responsibility, and duty to correct what he knows to be false. Yet, Dale J. Hilson, allowed falsified court documents to be presented to the court to prejudice the accused with an erroneous previous conviction of (MCL 750.152) in the accused' criminal history, specifically to support a habitual offender enhancement status, to maximize the penalty. Then, concealed/suppressed upon demand, (see exhibit "B") exculpatory evidence favorable to the accused for nearly seven years, further manipulated and mislead the court, condoned, procured and incited perjured police testimony during suppression hearings, and during trial with the alleged victim.

The suppression/concealment of that exculpatory evidence fatal to the credibility of the prosecution's primary investigating officer, "by silence" of state actors', was deliberate, which includes not merely an

9

election to suppress used for the very purpose of obstructing, but also a refusal to disclose evidence upon demand, which a high value to the accused' defense could not have escaped Dale J. Hilsons' attention.

The methods, procedures described to selectively prosecute one individual out of three, with such venomous attrition, and knowingly utilize false evidence, including false testimony in multiple hearings, to obtain a tainted conviction, violate every constitutional protection or guarantee established under state and federal law, and are otherwise contradictory to and/or inconsistent with powers bestowed by the people upon the office of the prosecuting attorney.

## (3). STATEMENT OF CLAIM

The defendant's in the instant case under the rule of law, swore an oath of office, a duty of care and protection of civil rights, privileges and immunities to every citizen in the state of Michigan, therefore defendant's in exchange for compensation of office, under the rule of law, owed that same duty of care, and protection of civil rights, privileges and immunities to the plaintiff;

**(A). Statement of Claim For, Defendant's No. (1) & (2):** As a natural member of these United States, residing in the State of Michigan, Mr. Roger Dale Roberts, rights are such as existed by the law of the land **antecedent to** the organization of the State, and can only be taken from him by due process of law, and in compliance with the Constitution.

Correlations of the United States Constitution, Art (6), sec. (2)(3) and Michigan Constitutional Art., (11), sec. (1), remove all doubt of a paramount sworn duty by defendant's, to support, uphold and protect such guaranteed fundamental rights and privileges of the plaintiff's, in our Constitutional form of Government.

One of those privileges is the Constitutional right to "bear or beget" a child. The legal age for consensual sexual relations in the state of Michigan is (16) years of age. Mr. Roberts age (49), a confirmed bachelor, was having consensual sexual relations with approx., (8) area women at the time of this incident. All of which were age (21) and up to (33) years, and one, age (17 years 9 months).

10

The police showed up at the private residence angry, and later testified they were viewing this allegation of rape akin to a homicide. They appeared pissed off that some suspected perpetrator, age 49, had potentially raped a 17, year old girl. And when they arrived at a private, dark residence, at 11:pm, curtains drawn, lights out, they were pretty fired up, threatening and intimidating, demanding answers and scaring my (10) year old son. Yet, after hours of seizing property, and forced interrogation, Sgt., Mike Kasher finally realized they were wrong and apologized, [even later testifying] that, at one point Kasher stated there was no crime here only a lot of wasted time and paperwork for Officer James Davis, and that this whole case was, **'bullshit'.**

The original constitutional claim arose on Sept., 19th., 2008, when the Norton Shores Police Officer(s), James Davis and command supervisor Sgt., Mike Kasher violated those civil rights by intimidating their way into a private residence, owned by Mr. Roberts, at (1889) Seminole road, Norton Shores, Michigan 49441, at 11:00 at night without a warrant, taking control of my private residence, restricting my freedom of movement for hours, ordering me to remove my child from the living room, taking my personal and business property without authorization, threatening me with my child's welfare that no one else was in the house to take care of my ten year old son, and if I did not tell them what they wanted to know things were going to go very badly for me, maybe even sideways. Refusing to recognize my fifth amend right to be free from self-incrimination by interrogating me for hours, with no possibility that compelled statements were the product of free choice, then denying my repeated request to speak to my attorney Shawn Davis. And finally, to get them out of my home, I was forced to wake my (10) year old son up at approx.., 1:40 am, and drive twenty minutes (one way) across town to 3480 East Apple Ave., to retrieve a single one page document they demanded.

All state actors are Governed by the U.S. Constitution, and must recognize and protect a citizen's civil rights, those whom violate those rights through malfeasance in office, may be terminated and penalized. It is the liability of state agencies, and department head(s) to correctly train and monitor their employees, to

11

insure they are not violating federal law, subjecting officers to termination, and/or malfeasance claims against the state.

Both officer James Davis, and Sgt., Mike Kasher are state actors, employed by the Norton Shores Police Department, City of Norton Shores, a political subdivision of the County of Muskegon, in the state of Michigan.

There were considerable contradictions in (my son's and my version) of the events of that evening, as compared to the version of events reported by police. My position has always been that the police were lying about the events of that evening to cover their unlawful conduct, denying the constitutional violations, yet admitting during testimony to a number of errors in both judgment and *procedure* as just tactical mistakes.

My retained counsel Mr. Scott Grabel demanded that I submit to polygraph testing to prove my version of the events were truthful. I successfully passed six polygraph examinations, confirming that I was truthful when describing the events, on the evening of Sept., 19th., 2008. Two tests on each of three points. (1). That I did not give permission for police to enter my home that evening. (2). That I did not voluntarily give my personal and business property to the police. And, (3). That in fact, I did ask specifically to speak to my attorney Mr. Shawn Davis more than once.

I would assume polygraph testing may be very stressful, especially, if you have something to hide. When the police were offered polygraph testing at no charge to them, to be paid for by the defense. They absolutely refused to submit to polygraph testing, covering the same subject.

The defendant in any criminal case has a right to have witnesses sequestered, so they do not color their testimony. Officer James Davis and Sgt., Mike Kasher were both witnesses to suppression proceedings, and were under court ordered sequestration. It can be deemed a felony to provide false testimony/perjury in an official proceeding material to a crime. This proceeding was a criminal action, and both officers were duly sworn and testified under oath.

12

**(i).** When the police were contacted for polygraph testing, they were offended, by the unconstitutional claims made by the defense. It's apparent from the record, police made sure the accused was further precluded from successfully presenting those claims, by preventing Mr. Roberts from receiving a full and fair opportunity to litigate those constitutional rights claim(s) in the state circuit court. The record reflects there was an unconscionable breakdown in the states corrective mechanism, when the police were caught by an officer of the court (Edward A. Newmyer), July 16th., 2009, committing what was tantamount to perjury. This was "after" they were also caught violating court ordered sequestration, while colluding in the hallway of the courthouse, to color, fashion, conform their testimony during suppression hearings, to adapt such testimony to meet the aggressive nature of cross examination [that day], by defense counsel Scott Grabel. The issues under cross were the very unconstitutional claims made by the defense, regarding the police' illegal entry, denial of counsel and the seizure of both personal and business property without consent. Resulting in the Government directly benefiting from the wanton, reckless and intentional disregard, and willful misconduct of the Norton Shores Police officers.

Wherefore, with knowledge, intent and overt action, the police intentionally impeded and obstructed the due administration of justice, denying Mr. Roberts a fair and impartial hearing, contrary to their oath/duty of office. MCL 752.11, MCL 750.505, and in violation of the U.S. Const., **Amend (14),** due process clause and equal protection of the law.

The accused has an absolute unequivocal due process right to not have false testimony presented against him in an official proceeding. Although the defense counsel argued that police "once again" were caught lying, and pointed out the ongoing and consistent contempt displayed by police toward the constitutional rights of the accused, both inside and outside of the courtroom, and their total disregard for professional rules of conduct. The court simply refused to believe that the police were capable of such violations, or would come down off their storm trooper attitude the night of Sept., 19th., 2008 as the accused

13

testified they did. This was, even after defense witnesses and both police officers had testified on record, that in fact they had done just that. **(KASHER; the only concern I had was he was a big guy)**, "but", things had calmed down after they had realized that there was no rape, **(KASHER; states at that point, I was pretty relaxed)** and there was no longer a threat, in their eyes, as the accused was not argumentative.

The courts determination, fact finding process appears flawed, the record reflects the court left questions of law unanswered, and that police officers unwittingly testified to their true intentions that night, emphasizing their willingness to violate civil rights. That, they had **already made a determination** that Mr. Roberts was their prime suspect in a rape allegation before they went to the house, inferring they came to the private residence specifically for a confession, and to confiscate the accused' cell phone. So, they were going to his home, and if he refused to talk, or to let them into the house, or to cooperate in any way they would immediately arrest him, (without a warrant) **"and they already knew that"**, before they even arrived at the private residence.

The officers proceeded to conduct a "knock and announce", at the residence without a warrant, and later explained it away to the courts as a "knock and talk", alleging the entire incident was totally consensual by the home owner.

The suppression hearings started in April and ended in August of 2009, there were approx., seven hearings over four months on the suppression issue, including special motions, it would be very difficult under those circumstances to not miss, forget, or overlook small important/ critical details or testimony.

From a credibility standpoint, Judge Timothy Hicks, simply refused to believe defense witnesses, demonstrating such favoritism to the police that he stated on the record that it did not even matter to him whether the police were lying, that it would not change his decision.

14

All citizens are vested with the right of equal protection, by public officials from the prejudicial effects of corruption in office and abuse of authority, as well as discovery, the full disclosure, prompt and upon demand of any/all exculpatory evidence within the plaintiff's possession.

Mr. Roberts as a citizen of the united states, entitled to those rights, and through counsel made specific appearance and demands for said discovery. See, exhibit " B ", dated Nov., 10th., 2008.

Moreover, the newly discovered evidence of the concealed/suppressed perjured testimony by officer James Davis, in the court record supplied by certified court reporter Ms. Alcorn (CER- 6232) on or about Feb., 13th., 2015, appears un-refutable that it would have proven fatal to the credibility of the police officers' testimony during their suppression hearings, and to the prosecutions key witness in the preliminary examination. The fact that state actors concealed exculpatory evidence for seven years, that was so vital to the defense, requires complete reversal of the judgment of the 14th., judicial circuit court, and gives rise to plaintiff's corruption claim, revitalizing the civil rights claim now presented to this Honorable United States District Court, Western District of Michigan, with the newly discovered evidence on or about Feb., 13th., 2015, of egregious harm committed against the plaintiff.

**B). Statement of Claim for, Defendant No. (3):** The statute of limitations to raise a 42 USC 1983, claim is generally based upon the state limitations. Michigan courts allow two years from accrual of the cause of action in this case. The moment at which the plaintiff had a basis to file suit was when he knew or should have known that he had suffered from that harm, and was aware of the nature of that harm.

The original claim dated Sept., 19th., 2008 was directly affected and further quashed by the fraudulent act of concealment, and/or suppression of the exculpatory prima facia evidence favorable to the accused that gives rise to the instant case. In 2008, there was only hearsay evidence, and the courts did not believe the accused, apparently because he opposed long term respected officers, and was facing twenty years in prison.

The accused after being exposed to multiple counts of flagrant and overt police misconduct, and ineffective assistance of counsel, started filing discovery motions searching for documents, evidence relative to this case i.e., warrant, etc., to verify his claim. State actors continued to conceal/suppress/refuse, and the courts denied discovery motions for (**seven**) years.

It was not before, but on or after **Feb 13th., 2015, that gave rise to this claim,** the approx.., date of the event of actually receiving discovery documents the plaintiff could not obtain in any other way. The evidence that could demonstrate the nature of harm to the plaintiff. A copy of the certified transcript of officer James Davis' testimony in the warrant authorization hearing from the original court reporter Ms. Alcorn, verified evidence of insidious machinations in breach of law, confirming prima facie evidence of the scurrilous practice, policy, or custom(s) of Norton Shores Police Department, that the accused had been complaining about, and searching for evidence of since Nov., 10th., 2008.

All state actors, as agents, ordained, commissioned, and/or established by the people, in exchange for the privilege of "granted immunities" must obey and comply with all constitutional provisions, in the protection of our constitutional form of Government, consistent with MCL 752.11. Perjury in an official proceeding, or the willful act of providing false declarations material the proof of a crime is in violation of MCL 750.422; U.S. Code Sec. 1623 and can be punishable up to fifteen years.

Officer James Davis violated his oath/duty, abdicated his office, and waived any grant of immunity, wielding power with willful malfeasance resulting acts of criminal conduct, violating federal and state law with his actual intention to defraud carried into effect.

The testimony revealed by Ms. Alcorn Feb 13th., 2015, reflects James Davis' criminal act, of willful intent to provide contradictory/false testimony under oath material to the proof of a crime, that Mr. Roberts purposefully, and intentionally, with apparent disregard "**sexually assaulted**" Ms. Cari Decheney. Such testimony by James Davis corruptly influenced, persuaded a magistrate to believe that during this sexual

16

assault, Mr. Roberts specifically, drops his pants "sticks his genitals in her face, forcing her to have oral sex with him", to perform oral sex on him. Further embellishing said testimony stating Ms. Cari DeCheney was face down on the bed, inferring Mr. Roberts forcibly penetrates her from behind while she is insisting/yelling for him to stop and get off of her.

The false swearing testimony See, exhibit "A", was replete with sensationalized conclusions, resulting in "distinct and expressed" impression of actual presence at/during the commission of the alleged, un-named offense, yet, said testimony sets forth no valid material facts, no statements, documents, exhibit's qualifying or offered as support, upon which such conclusions can be drawn, nor inferences founded.

Ms. Alcorns certified court record, exhibit "A", further reflects sworn testimony that is contradictory to officer James Davis' original stated position in police incident reports on or about Sept., 19th., 2008, wherein he reported **"After reviewing Roberts other video's [35], it does not appear that any of the women were coerced into having sex with him",** and "I am unable to determine that Ms. Cari DeCheney was forced to have sex with Roberts". Then offering subsequent testimony in a preliminary examination, Dec., 19., 2008, and again, in suppression hearings April., 16th., 2009 thru July 17th., 2009, all of which [also contradictory] to testimony given in said probable cause hearing, wherein these latter hearings, James Davis testified under oath that as an experienced police officer investigating (CSC) cases for years, he saw "no" evidence of any kind that would suggest or could be construed as "**any" element of force, duress, or coercive activity of any kind** from Mr. Roberts to force Ms. DeCheney to have sex with him.

The charge was malicious, and/or grounded on perjury/false testimony, once eliminated there is no valid evidence remaining before the magistrate, to support an allegation of child sexually abusive activity, for the purpose of producing child sexually abusive material. The only rational conclusion, given the form of the sworn testimony upon which such charge was based, is the magistrate indicted Mr. Roberts on the perjured

testimony that included an allegation of a sexual assault. Based upon the record, any other conclusion is contrary to U.S. Supreme Court precedent.

James Davis' action(s), described in these pleadings, and in court record, reflect conduct by state actors that is so outrageous, due process principles absolutely bar the Government from invoking judicial processes to obtain a conviction. During this act of malfeasance apparently, James Davis' intent, was willful, wanton, reckless, with total disregard of its for-seeable consequence, but to punish Mr. Roberts for having consensual sexual relations with multiple women in the Norton Shores area, that were more than half his age.

**(C). Statement of Claim for, Defendant's No. (4) & (5):** The City of Muskegon, the Muskegon County prosecutor's office, Dale J. Hilson acting as senior prosecuting attorney, under the command of Tony Tague, for the Municipal Corporation of Muskegon County, "jointly" under color of law, made a policy choice to violate equal protection and due process rights guaranteed under State and federal law, Mich., Const., 1963, **Art (1) sec. (2),(11),(17)** ; U.S. Const., **Amend., (4),(5),(14),** when they discriminated against the accused based upon his age, and arbitrarily deprived him of liberty, and personal property.

The Prosecutors office did not rotely enforce state law as an arm of the state. Nor, did they merely comply with state mandates that afford no discretion. Rather, they acted in their own local, policy making capacity, specifically to enter into the role as an administrator or independent investigative officer of the municipality to severely punish Mr. Roberts, yet allow the accomplices to the alleged crime go untouched. The quasi-judicial officials in the prosecutor's office acted on their own behalf (or at least, "only on the county's") behalf, when they used their position as county prosecutor's to "make a policy choice" to circumvent state law, including but not limited to MCL 767.39 and, P.A., 2004, No. 478, MCL 750.145C Sec. (8).

This new action by the prosecutor's office, cast themselves into a new role as administrator or investigative officer of the Municipality, rather, than that of a neutral advocate of the state, associated primarily with initiating and prosecuting the judicial phase of a criminal process. In the instant case the

18

prosecutor's office appeared to be acting solely as the personal advocate for the alleged victim and the accomplices to the alleged crime, and not as an advocate of the state. Further serving as the personal defense counsel for the Decheney family, contrary to MCL 767.39, when Dale J. Hilson chose to ignore the preliminary examination judges' opinions/assertions multiple times on the record, that under Mich., law, there are no exemptions for Mr. Richard Decheney and Ms. Patricia Decheney to avoid culpability of their own charges. See exhibit "C". The DeCheney's were immediately removed from the witness list after the preliminary examination, never attended a single hearing and were moved out of state.

It was also an absolute abuse of power for the prosecutor's office to circumvent the legal process by not referring the illegally seized evidence to a law enforcement agency having jurisdiction to determine potential affirmative defenses, immunities and exemptions under this statute, as provided in P.A. 2004, No. 478, MCL 750.145C, (8).

When considering the provisional history of this statute, the current language inherently implies that the state legislature during the most recent enactment update, divested the local prosecuting attorney of **"any independent legal authority"** to determine whom may be entitled to immunity or exempt under this statute pursuant to sec. 145C(8)(9). Instead the prosecutor engages in a form of forum shopping to thwart a proper and neutral felony investigation by the state police of all parties involved, to all but insure a conviction for Mr. Roberts and secure a free pass for the Decheney family.

**(D). Statement of Claim for, No. (6) Defendant:** Dale J. Hilson, (hereinafter referred to as "Hilson") acting under color of law as senior prosecuting attorney, under the command of Muskegon County Prosecutor Tony Tague, for the Municipality of Muskegon County, purported to conduct himself in the course of his official duty, made a policy choice to arbitrarily deprive Mr. Roberts of his liberty, while acting as private counsel, or personal advocate for the alleged victim, and accomplices to the alleged crime, contrary to MCL 767.39, and contravening language of MCL 750.145 (specifically referencing "knowingly allows").

19

Thereby, abdicating his office, engaging in actions not associated with the advocacy of the state of Michigan(s) office of the prosecuting attorney, but unilaterally and outside of the law. Denying fair and just treatment in judicial proceedings, investigations, violating equal protection and due process rights guaranteed under state and federal law, and constitutional right(s) of the accused. Mich., Const., 1963, **Art. (1), sec. [2],[11],[17];** U.S. Const., **Amend., (4), (5), (14)** as follows;

The prosecutor starts with a duty, if it's in any way relevant to the case, to correct what he knows to be false. Yet, in the instant case, he concealed, suppressed upon demand, exculpatory evidence favorable to the accused, when disclosure is corollary to principles of the accused' constitutional rights.

Silence regarding discovery may be equated to fraud where prosecution had a legal obligation/moral duty to speak. A lie is a lie no matter what its subject. Hilson, knew or should have known the warrant authorization hearing testimony was perjured, upon review of police reports disclosed by officer James Davis when a charge of rape was rejected by the same prosecutor.

It was an abuse of power for Hilson to circumvent the legal process by not referring said illegally seized evidence gathered pursuant to P.A. 2004, No. 478, MCL 750.145C,(8), to a law enforcement agency having jurisdiction to determine affirmative defenses, immunities, and exemptions under this section.

Rather, made a personal choice to circumvent the mandatory element of a crime requiring proof of requisite knowledge, where said act must be coincident with an **intent** to bring about the particular result the statute seeks to prohibit. Instead, Hilson utilized Davis' allegations of "Malum in Se" acts, implicating inherently immoral conduct where guilt will automatically be assumed. Then built on this theme when he procured, incited, condoned perjury during trial.

**FOR EXAMPLE**; Wherein, the prosecution was fully aware the allegation of a sexual assault was debunked, Sept., 19th., 2008, by shift commander Sgt., Mike Kasher on the scene. Yet, record(s) reflect that Hilson, "mislead and manipulated" the court to his favor, then procured, incited, condoned, perjured

20

testimony to be entered by the alleged victim, to charge/allege highly prejudicial acts of a sexual assault, to the jury.

Prior to engaging the jury, Hilson argues with the court to prevent defense from admitting credibility documents into evidence against Decheney regarding this exact subject, when he states to the court; "I wasn't planning on asking any questions about any rape allegation", because that's not what this case is about. See, TT. 7/16/09, P. 131, L. 5-7. "This is not a CSC case", it was never charged that way. See, TT. P. 140, L. 23-24. To further reassure the court he states, "I won't lie to the court, I can certainly ask questions in a way that doesn't bring that subject up". See, TT, P. 136, L. 23-25.

Then at first opportunity, in an opening statement he prejudiced the jury with allegations of sexual assault, "Malum in Se" acts, inferring "Mr. Roberts had somehow threatened Decheney. See, TT. P. 149, L. 14-17, and essentially made her perform oral sex on him. See, TT. P. 148, L. 8-11. Hilsons' plan included setting the foundation by leading officer Davis to state on the record that "he was investigating a Rape Case". TT. P, 213, L. 20-23. Then to drive home his point Hilson incites Decheney to enter known perjured testimony when she states, "He pulled down his pants and forced his penis in my mouth". See, TT. P. 177, L. 3-12, and, "Then he takes off the rest of his clothes, puts me on top of him and makes me do [69]. See, TT. P. 179, L. 15-16.

The highly prejudicial effect this perjured testimony had on the jury is evidenced by a juror's question to the court. **"why no objection to forcible rape".** TT. P. 209, L. 16-17. The highly prejudicial effect of this testimony is again evidenced, when a reproduction of the same testimony appears in the opinion of the Michigan Court of Appeals, in People V. Roberts.

The prosecutions intention to secure a discriminatory conviction with maximum penalty at all cost, is evidenced in part by his unrestrained personal attacks in the shadow of the foregoing testimony. This case was not about statutory law, this case was personal and reflects the arbitrary whims and caprices of Hilson,

21

outside of an office-holder's official capacity. He relied on false "Malum, in Se" allegations, where guilt is assumed, and to further insure success of conviction, he made sure the mandatory required element of requisite knowledge was omitted, failing to instruct the jury on all the law of the case.

Hilson couldn't help himself, acting by the sheer force of will and power, without the imprimatur of law, and outside the office as advocate of the state, motivated by an opinion of disgust, **'albeit legal'** conduct of Mr. Roberts. Then, elected to use official influence to **punish him any way possible** for having consensual sexual relations with multiple area women half his age, and one (17) year (9) month over-developed Decheney.

In a flurry of discourse, Hilson unwittingly admits/confesses his personal knowledge, information and belief that Mr. Roberts' conduct, **[in fact]** never met the required requisite knowledge element. Yet, Hilson berated and discriminated against the age of Mr. Roberts, calling him a dirty old man, stating "he had a montage of about six other women on his phone. To me this was his personal **ADULT VIDEO STORE** in his hand, that he could carry around with him. Maybe even and show his buddies. Further opining that the conduct was disgusting and reprehensible, that this case was only about sex, an opportunity for him to use these young WOMEN to satisfy his own sexual desires, after earlier boasting to police he didn't get away scott free, did he.

However, the alleged facts presented/endorsed by the prosecution were misrepresented, incomplete, as knowing and complicit to further conceal/suppress exculpatory evidence of significance and favorable to the defense.

To maximize penalty Hilson proliferated the single alleged offense, the successive prosecution was contrary to stare decisis, where it equaled the same time sequence, intent, goal. Moreover, three counts were unconstitutional, where they were impermissibly multiplicitous in themselves. The allowable unit of

prosecution is a matter of statutory interpretation, and is not determined by the alleged conduct of the accused.

Hilson even submitted a charging instrument with an erroneous previous conviction of (MCL 750.152) in the accused' criminal history, specifically to support a habitual offender enhancement status, to maximize the penalty, allowing the sentencing to be based upon materially false information and insuring a long prison sentence.

That defendant's violated the rule of law, breached their oath of office/duty; and that as a result of the defendant violating the rule of law, defendant caused plaintiff to suffer injuries, other damages and irreparable harm, That because defendant's violation of the rule of law caused plaintiffs injuries, losses and irreparable harm, plaintiff is entitled to relief in the form of compensation from the defendant's.

# (4). INJURIES

**(A).** All Citizens of the United States are entitled to constitutional right(s), to life, liberty and the pursuit of happiness, and guaranteed fair and just treatment in all judicial proceedings or investigations, without infringement. Including fair/equal protection, by public officials from prejudicial effects of corruption in office and abuse of authority.

The right to discovery, full disclosure, prompt and upon demand of any/all exculpatory evidence within the plaintiff's possession. And, to demand the fair administration of equal justice, for the protection against conduct described herein.

**(i).** Mr. Roberts is a citizen if these United States, and entitled to all such rights.

**(B).** Most families in the United States work their entire lives to amass even a small estate to provide care, support and educations, college funds for their children, before retirement from the workforce.

23

**(i).** Mr. Roberts raised two stepchildren for ten years, and three children one ten, one six, and one five years of age, in 2008. Three of the five children are now of college age, and the other two are nearing college age. None of these children are attending college or currently have the opportunity to attend college.

**(C).** This was after Mr. Roberts had built an estate worth approx., $3,500,000.00, which included a Powerhouse Franchise as the center-point of his portfolio. The Gym was located on three acres in a newly remodeled property at 3480 East Apple Ave., Muskegon, Michigan, built in 1997, and owned by Mr. Roberts with purchase price, plus improvements, value was a little over $500,000.00. The Powerhouse gym sat on over eighteen prime commercial acres, purchase value $285,000.00, the Gym furnished with brand new equipment purchase price thru Feb 2006, $375,000.00.

The Gym produced approx., $39,500.00, per month, and supported properties such as a subdivision in Norton Shores on Windemere Court, under development, with five lots, building new homes $200,00.00 each, a new home on the golf course 309 Woodview drive, $150,000.00, vacant land in Grand Rapids valued at $50,000.00 etc..

**(D).** However, irregularities described herein, repugnant to our constitution, in total disregard for sworn oath to safeguard same, denied Mr. Roberts due process rights to the fair and just treatment in judicial proceedings and investigations, and robbed him of his liberty for seven years, without due process guaranteed under law. And now continue to violate his constitutional rights while on (two year) parole, violating ex-post facto laws applying new punishing provisions of the 2011 SORA act, to a conviction based upon an allegation from 2008, making it nearly impossible to start anew, look for work, find a place to live, integrate back into my children's lives and once again become a productive member of society.

**(E).** The criminal acts by officer James Davis, contravene state and federal law, and violate a constitutionally guarded liberty interest in not having false testimony intentionally presented in a judicial proceeding against the plaintiff. Combined with an inviolable/absolute right to meaningful protection against

24

the deliberate concealment, non-disclosure by the prosecutor's office, of exculpatory evidence, favorable to the accused, fatal to the prosecution's case, were instrumental in denying Mr. Roberts a defense, or a full fair opportunity to litigate his constitutional rights claims in state court, and more importantly "**a fair trial**".

Obedience to our law is the bond of society, and the officers set to enforce the law are not exempt from its mandates. The intentional abuse of powers conveyed by our constitution by Government agents caused Mr. Roberts' to lose his monthly revenue stream, and liquidate the 'above mentioned' estate in a fire sale for pennies on the dollar for attorney fees, then to have the state seize those funds and constructively deny Mr. Roberts effective assistance of appellate counsel. And now, after being imprisoned for a period of seven years to be released a pauper and forced to rely on public assistance and friends to survive.

# (5). RELIEF

(A). **Wherefore**, Mr. Roberts respectfully demands this Honorable Court to order defendants to reimburse Plaintiff compensatory damages for pecuniary losses in an effort to indemnify the injured person for the loss suffered as follows. **COMPENSATORY DAMAGES**

## SIX MILLION EIGHT HUNDRED EIGHTEEN THOUSAND AMERICAN DOLLARS

### $3,500,000.00, in lost assets
### $3,318,000.00, in loss of income at $39,500.00 per month times seven years

(B). In addition, Plaintiff requests this honorable court to award damages where additional losses were incurred, where plaintiff suffered, and continues to suffer emotional pain, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses from increased anxiety and blood pressure resulting in a heart attack, weeks after his incarceration causing an immediate invasive surgery and **permanent loss** of a large portion of heart function, and a life time of medication.

C. The defendants well aware of their responsibility and sworn oath/duty of office, with malice and reckless indifference to federally protected right(s), obstructed justice and demonstrated egregious, unlawful conduct specifically to ruin his business, his reputation, and literally destroy Mr. Roberts' entire life, because **his age was twice that of his recreational sexual partners.**

## (6). PUNITIVE DAMAGES IN AN AMOUNT SUITABLE TO THE OFFENSE:

(A). The plaintiff seeking retribution for the people of the County of Muskegon, State of Michigan, to serve as a deterrent to send a message through the media to prevent further similar corrupted, egregious misconduct in the future, and to punish the state actors on the theory that the interests of society and the plaintiff harmed can be met by imposing additional damages on the defendants, and because it involves fundamental issues of justice, fairness and the public good.

(B). The corrupt actions of tyranny and oppression by state actors in our law enforcement and judicial governments, represented absolutely outrageous conduct that involved obstruction of justice resulting criminal acts, in the name of the people of the state of Michigan, representing bad faith, fraud, perjury, conspiracy, wanton, and reckless utter disregard for our constitutional form of Government, the rights and interests of the plaintiff, his family, his children or the fundamental due process rights of all citizens.

# (7). VERIFICATION/CERTIFICATION

(A). UNDER Federal Rule of Civil Procedure (11), by signing below, I certify to the best of my knowledge, information and belief that this complaint:

(1). Is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation.

**(2).** Is supported by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law.

**(3).** The factual contentions have evidentiary support, or if specifically, so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

**(4).** The complaint otherwise complies with the requirements of rule (11).

# (8). PARTY WITHOUT AN ATTORNEY – PRO PER

**(A).** I agree to provide the Clerk's office with any changes to my address where case related papers may be served. I understand that my failure to keep current address on file with the Clerk's Office may result in the dismissal of my case.

Respectfully, submitted

Date: February 13th., 2017

Mr. Roger Dale Roberts
231-329-2411
rd.roberts58@yahoo.com
Plaintiff, Pro Per